**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

---

7001 EAST 71ST STREET, LLC,

       Plaintiff

v.

CONTINENTAL CASUALTY COMPANY,

       Defendant.

Civil Action No:1:13-cv-00638-RJD-SMG

---

**DEFENDANT CONTINENTAL CASUALTY COMPANY'S**
**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Bernadette Kelly Kirwin (BK4718)
COLLIAU CARLUCCIO KEENER MORROW
 PETERSON & PARSONS
125 Broad Street, 7th Floor
New York, NY  10004
Tel. (212) 440-2747
*Attorneys for Defendant*
*Continental Casualty Company*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ..................................................................................ii-iv

PRELIMINARY STATEMENT .......................................................................... 1

STATEMENT OF FACTS ................................................................................... 1

ARGUMENT ....................................................................................................... 7

I.    The Court Can Grant Summary Judgment Interpreting the Policy ......................................... 7

II.   Plaintiff Has Not Met Its Burden of Proof to Show a Covered Breakdown
      – Sudden and Accidental Direct Physical Damage ............................................. 8

III.  Plaintiff's Own Evidence is that Corrosion, Which the Policy Excludes,
      Necessitated Replacement of the Electrical Equipment. ................................. 11

IV.   Plaintiffs' Losses were Caused by a Combination of Excluded Causes
      to Which a Clear Anti-Concurrent Cause Provision Applies So that Even
      if Plaintiff Identified a Covered Breakdown, the Losses are Not Covered. ...................... 12

      A.   The Policy's Anti-Concurrent Causation Provision Warrants Summary
           Judgment for Continental if Any Excluded Peril Contributed to 7001's Loss ................. 13

      B.   Policy Exclusions Applicable to Plaintiff's Loss .................................................. 16

CONCLUSION.................................................................................................... 22

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*80 Broad Street Co. v. United States fire Ins. Co.*,
  88 Misc. 2d 706 (N.Y. Sup. Ct. 1975), Aff'd 54 A.D.2d 888 (1st dep't 1976)......................... 12

*ABI Asset Corp. v. Twin City fire Ins. Co.*,
  No. 96 Civ. 2067 (AGS), 1997 WL 724568 (S.D.N.Y. Nov. 18, 1997).................................... 14

*Alamia v. Nationwide Mut. Ins. Co.*,
  495 F.Supp.2d 362 (S.D.N.Y 2007)........................................................................................ 14

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)................................................................................................................. 7

*Assurance Co. of America, Inc. v. Jay-Mar, Inc.*,
  38 F. Supp. 2d 349 (D.N.J. 1999) ......................................................................................... 15

*B&W Heat Treating Co., Inc. v. Hartford Fire Ins. Co.*,
  23 AD.3d 1102 (4th Dept. 2005) ........................................................................................... 19

*Bamundo, Zwal & Schermerhorn, LLP v. Sentinel Ins. Co., Ltd.*,
  2015 WL 1408873 (S.D.N.Y. Mar. 26, 2015) ....................................................................... 20

*Bao v. Liberty Mut. Fire Ins. Co.*,
  535 F. Supp. 2d 532 (D. Md. 2008) ....................................................................................... 15

*Bilbe v. Belsom*,
  530 F.3d 314 (5th Cir. 2008) ................................................................................................. 15

*Blair v. Allstate Indemnity Co.*,
  998 N.Y.S.2d 754 (N.Y. App. Div. 4th. Dept. 2015) .............................................................. 8

*Budd Looms, Inc., v. American Cas. Co. of Reading PA.*,
  43 A.D.2d 923 (App. Div. 1st Dep't 1974) ........................................................................... 20

*Casey v. General Accident Ins. Co.*,
  178 AD.2d 1001 (4th Dept. 1991) .................................................................................... 13, 19

*Cashew Holdings, LLC v. Canopius U.S. Ins. Inc.*,
  2013 WL 4735645 (E.D.N.Y. 2013)....................................................................................... 15

*Clarke v. Travco Ins. Co.*,
  2015 WL 4739978 (S.D.N.Y. 2015) ...................................................................................... 14

*Connie's Constr. Co., Inc. v. Continental Western Ins. Co.*,
227 N.W.2d 204 (Iowa 1975) ............................................................................. 20

*Consolidated Edison Co. of New York, Inc., v. Allstate Ins. Co.*,
98 N.Y.2d 208 (2002) ......................................................................................... 8

*Continental Ins. Co. v. Arkwright Mut. Ins. Co.*,
102 F.3d 30 (1st Cir. 1996) .............................................................................. 21

*EB Metal & Rubber Indus., Inc. v. Federal Ins. Co.*,
84 AD.2d 662 (3d Dept. 1981) ......................................................................... 19

*Front Row Theatre, Inc. v. American Mfr's. Mut. Ins. Companies*,
18 F.3d 1343, 1994 FED App. 0083P (6th Cir. 1994) ...................................... 15

*Garson Management Co. v. Travelers Indemnity Co. of Illinois*,
300 A.D. 2d 538 (2nd Dep't 2002) .................................................................. 12

*Goodman v. Broome County Co-Operative Fire Insurance Co.*,
135 A.D. 2d 906 (App. Div. 3rd Dep't 1987) .................................................. 19

*Jamaica Public Service Co., Ltd. v. La Interamericana Compania de Seguros Generales, S.A.*,
1 A.D.3rd 130 (App. Div. 1st dep't 2003) ....................................................... 22

*Kaleb E. Lindquist American Legion Post #24 v. Lake of the Woods Agency, Inc.*,
2005 WL 525699 (Minn. Ct. App. 2005) ........................................................ 15

*KJDE Corp., d/b/a K.J. Electric v. The Hartford Fire Ins. Co.*,
89 AD.3d 1531 (4th Dept. 2011) ..................................................................... 19

*Kula v. State Farm*,
212 A.D.2d 16 (4th Dept. 1995) ...................................................................... 14

*La Casa Di Arturo, Inc. d/b/a Arturo's v. Tower Group, Inc., et al.*,
49 Misc.3d 1209(A) (Sup. Ct. NY Cty 2015) .................................................. 20

*Lantheus Medical Imaging Inc. v. Zurich American Ins. Co.*,
2015 WL 1914319 (S.D.N.Y) ......................................................................... 12

*Lattimore Road Surgicenter, Inc., v. Merchants Group, Inc.*,
71 A.D.3d 1379 (App. Div. 4th Dep't 2010) ................................................... 20

*Legacy Condominiums, Inc. v. Landmark American Ins. Co.*,
2008 WL 80373 (S.D. Miss. 2008) .................................................................. 15

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp..,*
475 U.S. 574 (1986) ............................................................................................................ 7

*Morgan Stanley Grp. Inc. v. New England Ins. Co.,*
225 F.3d 270 (2d Cir. 2000)................................................................................................ 7

*Moshiko, Inc. v. Seiger & Smith*, Inc.,
529 N.Y.S.2d (1st Dep't 1988); Aff'd 533 N.Y.S.2d 52 (1998) ................................. 14

*Newlo Realty Co., U.S.F&G. Corp,*
213 A.D.2d 295 (App. Div. 1st Dep't 1995). ........................................................... 19

*Ngyuen v. Atlantic Cas. Ins. Co.,*
2008 WL 1884050 (E.D. La. 2008) ........................................................................... 15

*Pakmark Corp. v. Liberty Mut. Ins. Co.,*
943 S.W.2d 256 (Mo. Ct. App. E.D. 1997) ............................................................... 15

*Peerless Dyeing Company, Inc. v. Industrial Risk Insurers,*
392 Pa.Super. 434 (Pa. Sup. Ct. 1990)............................................................... 8-9, 11

*Potoff v. Chubb Indemnity Ins. Co.,*
60 A.D.3d 477 (N.Y. App. Div. 1st Dept. 2009) ........................................................ 9

*Purpura v. Continental Cas. Co.,*
143 A.D. 2d 741 (App. Div. 2nd Dep't 1988) ........................................................... 22

*Ratliff Enterprises, Inc., American Employers Ins. Company,*
334 Ark. 547 (Ark. Sup. Ct. 1998) ........................................................................... 22

*Roundabout Theatre Company, Inc. v. Continental Casualty Company,*
302 A.D.2d 1 (N.Y. App. Div. 1st Dept. 2002)........................................................ 8-9

*Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan,*
7 F.3d 1091 (2d Cir.1993)........................................................................................... 7

*Vill. Of Sylvan Beach v. Travelers Indem. Co.,*
55 F.3d 114 (2d Cir. 1995).......................................................................................... 7

## RULES

Fed.R.Civ.P. 56(b) ..................................................................................................... 1

Fed.R.Civ.P. 56(a) ..................................................................................................... 7

## PRELIMINARY STATEMENT

This is an insurance coverage dispute arising out of the Sandy storm. Plaintiff 7001 East 71st Street LLC ("7001" or "Plaintiff") seeks coverage from Continental Casualty Company ("Continental") for alleged damages to its equipment in a strip mall located in Bergen Beach, Brooklyn, New York.  Continental provides coverage for Equipment Breakdown only,

 Continental moves for summary judgment pursuant to Fed. R. Civ. P. 56(b) because there is no set of facts on which Plaintiff can establish coverage.  Plaintiff's expert asserts the storm damaged 7001's roof allowing rain to leak through walls into the basement. And, Plaintiff's expert also identified surface flooding, water seepage, sewer backup, corrosion, fire and explosion as contributing causes.

Each of the contributing causes are excluded. And, the Policy contains an "anti-concurrent cause" provision stating that all loss is excluded if an excluded peril is a direct or indirect cause even if another cause contributes in any sequence.  Thus, even if Plaintiff comes forward with evidence of a covered contributing cause, there is no coverage because multiple excluded causes contributed to Plaintiff's loss. Accordingly, this Court should grant summary judgment that no coverage exists for any of Plaintiff's losses.

## STATEMENT OF FACTS

Plaintiff, 7001, is the owner of a strip mall that sits on the Bergen Beach peninsula surrounded by waterways – namely, the Paerdegat Basin, East Mill Basin, Mill Basin and the great Jamaica Bay. (Kirwin Decl. ¶ 5).

Continental issued an equipment breakdown policy No.5084939886 to 7001 East 71st Street, LLC, effective from October 2, 2012 through October 2, 2013 (the "Policy.") (Affidavit of John Kramer, ¶5 and Exh. 1 thereto.) The Policy is a single peril policy that covers equipment

1

breakdown subject to the policy's terms, conditions, limitations, exclusions and definitions. Kramer Aff., ¶6).

On October 29, 2012, Sandy hit the New York City vicinity (Kramer Aff. ¶4). A resident testified to flooding in the area that left a boat in the parking lot across the street from the strip mall. (Kirwin Declaration, ¶10, Exh.4, transcript of John Pizzirusso, p. 47-48). A contractor that performed work in the strip mall described how everything in the basement was under water. (Kirwin Decl.¶11, Exh.5, transcript of Luigi DePasqaule, 75:5-9). And his invoice for the work he did described how the electrical service had to be replaced due to damage from salt/ocean water. (Kirwin Decl., ¶12, Exh. 6),

Plaintiff notified Continental of its claim on November 2, 2012. (Kramer Aff. ¶8). Plaintiff's counsel granted Continental access for inspection on November 27, 2012. (Kramer Aff. ¶9). Continental retained John DiGrande, P.E., a licensed Professional Engineer, in the state of New York, and other jurisdictions, with more than 30 years of experience, to inspect the strip mall and its equipment to determine the cause of the loss. (Kramer App.¶10).

DiGrande issued three reports including his expert report dated April 30, 2015. (See DiGrande Aff. filed on December 4, 2015 at ECF 82-5). DiGrande inspected the property on November 27, 2012, and observed flood damage in the basement, inoperable sump pumps, and corrosion to electrical equipment in the basement (DiGrande Aff. ¶1, Exh. B).  He documented his findings with reports and photographs. (DiGrande Aff. ¶11, Exhs. A, B and C.)

On December 13, 2012, Continental wrote to plaintiff's counsel, and declined to provide coverage for the claim on the basis that it was excluded because the alleged damage was caused by, *inter alia*, the excluded events of water and windstorm. (Kramer Aff. ¶11, and Exh. 2).

Plaintiff filed its Complaint against Continental on February 4, 2013 and Continental filed its Answer on March 25, 2013. (Kirwin Decl., ¶7 and 8 and Exhs. 1 and 2.)  Discovery taken reveals no genuine dispute that the storm left approximately two feet of water in 7001's basement.  Plaintiff's expert opines that the water resulted from windstorm damage to the roof. Continental's experts opine that the water resulted from flood and/or sewerage backup.

The overwhelming evidence is that the predominant cause of the water damage was flood and not rain leaking through the roof. See Kirwin Decl. ¶¶9-13, and Exhs. 3-7. This is most obviously demonstrated by the fact that two inches of rainfall on the roof could not have created two feet of water in the same sized basement.  (Vivenzio Aff., Exh. 1, expert report at p. 5.)

However, accepting Plaintiff's version of the facts any damage to 7001's equipment resulted from a combination of the following, which are established by Plaintiff's own experts:

- Windstorm
- Water seepage
- Sewer backup
- Corrosion
- Explosion and/or fire.

Joel Silverman is plaintiff's designated causation expert.  Silverman issued reports dated December 16, 2012, January 4, 2013, January 6, 2013 and a final report, for purposes of this litigation, dated November 4, 2014. (Kirwin Decl., ¶14, Exh. 8).  Transcripts of Silverman's May 18, 2015 and May 26, 2015 depositions are annexed as exhibit 9 the Kirwin Declaration.

Silverman's reports and testimony reflect a theory that windstorm damaged the roof, allowed water to run down exterior walls into the basement where it collected and damaged the equipment. As pertinent to this motion, Silverman's December 16, 2012 report includes the following:

3.) The interior infiltration has caused damage to finishes … as well as diffuse water damage in the basement … and appears to be consistent with the roof damage, likely due to wind, that was documented by Martone who reported (and photo documented) that a large area of the roof membrane was displaced, with multiple "waves" and splits (penetrations) that permitted wind borne water to penetrate the roof and run down into the basement.

\*\*\*

6.)…On loss of electrical power during the storm, these (sump) pumps stopped operating…permitting the inflow of water from all sources (i.e. the major roof leaks, limited street flooding, municipal sewer back-flow, and ground water).

\*\*\*

7.) The Electrical service …show evidence of severe corrosion and salt/oxide deposits on copper connectors and the aluminum bus bars….

(Kirwin Decl.,¶14, Silverman report dated 12/16/2012 at Exh.8).

Silverman testified that the electrical equipment in the basement sustained corrosion:

Q.    If we were to go to the Federal Courthouse . . . what opinion would you offer as to how the electrical system was damaged?

A.    It was damaged by water infiltration, primarily from the roof, and – exclusively from the roof that caused short circuiting and other problems, **corrosion** and other problems, given that the fact that the – water was probably in the basement for some period of time, and there was no heat on in the building for an extended period of time, and  other than – and, again, the extent of damage is esoteric and would have to be kind of ferreted out for a licensed electrician. (emphasis added)

(Kirwin Decl. ¶15, Exh.9, 5/26/2015 tr. at p.350-352.)

Silverman also suggested fire and/or explosion as possible cause of loss.  (Kirwin Decl.

¶¶14-15, Exh. 9, Silverman 5/15/2016 trans. 150:4-151:20 and Silverman report Exh. 8 to

Kirwin Decl.).

Plaintiff's environmental consultant, Edward Olmstead, testified that the water in the

basement was "category two" water (water containing fecal coliform) and "category three" water

(black water or water that emanated from a sewage source with fecal contamination).    Mr.

4

Olmstead's view that the water in the basement was sewerage and not clean rain water, was confirmed by laboratory analysis that tested positive for fecal coliform.  The fecal coliform establishes sewer backup. Mr. Olmstead also testified that the water was flood water based upon his visual observations.  (Transcript of Edward Olmstead, Exh. 3, ¶9 to Kirwin Decl., at 41:15-45:25 quoted portion at 45:6-25).

The foregoing shows that 7001's loss resulted from a combination of windstorm, water seepage, sewer backup, corrosion, explosion and fire, all of which are excluded. The Continental Policy contains the following insuring clause:

A. Coverage

1. Covered Cause of Loss
Covered Cause of Loss is a "Breakdown" to "Covered Equipment."

The Policy contains the following definition.

1.  "Breakdown":

a.  Means sudden and accidental direct physical loss to "Covered Equipment," which manifests itself by physical damage, necessitating its repair or replacement, unless such loss is otherwise excluded within this Coverage Form….

The Policy also contains a definition of "Covered Equipment."  For purposes of this motion, Continental does not dispute that the electrical equipment or the rooftop HVAC units are "Covered Equipment." Similarly, some of the other items of equipment that were in 7001's basement referenced in Plaintiffs' expert reports may be Covered Equipment.

The Policy exclusions are preceded by anti-concurrent causation language, as follows:

B. Exclusions

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded, regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

The exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

The following Policy exclusions apply to the facts presented:

3.    Water
    a.    Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

\*\*\*

    c.    Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

\*\*\*

    e.    Water under the ground surface pressing on, or flowing or seeping through:
        (1)    Foundations, walls, floors or paved surfaces;
        (2)    Basements, whether paved or not;
        (3)    Doors, windows or other openings; or

\*\*\*

6.    An explosion…

7.    Fire or combustion explosion including those that:
    a.    Result in a "Breakdown:'
    b.    Occur at the same time as a "Breakdown"; or
    c.    Ensue from a "Breakdown."

13.    Depletion, deterioration, corrosion, erosion or wear and tear. However if a "Breakdown" occurs, we will pay the resulting loss or damage.

15.    A "Breakdown" that is caused by windstorm or hail.

## **ARGUMENT**

### I.    **The Court Can Grant Summary Judgment Interpreting the Policy**

Fed.R.Civ.P. 56(a) provides summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp..,* 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Summary judgment may be rendered here even though the parties disagree on some facts because plaintiff's version of the facts warrants judgment as a matter of law.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  And, the Court may grant a motion for summary judgment when interpreting contract terms "where the agreement's language is unambiguous and conveys a definite meaning." *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan,* 7 F.3d 1091, 1094 (2d Cir.1993)

According to New York law, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *Vill. Of Sylvan Beach v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995). The insured bears the burden of showing that the insurance contract applies to the claimed loss. *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000). If an insured satisfies that burden and the insurer

points to an exclusion as the basis for a denial of a coverage, the insurer bears the burden of demonstrating that an exclusion applies. *Id.* at 276.

Here, if 7001's version of the facts are accepted, then any damage to Covered Equipment was caused by a combination of excluded windstorm, flood, water seepage, sewer backup, corrosion, fire and explosion. Thus, based on plaintiff's version of the facts and the Policy's anti-concurrent causation introductory language for its exclusions, all loss is excluded as matter of law.

## II.     <u>Plaintiff Has Not Met Its Burden of Proof to Show a Covered Breakdown –<br>Sudden and Accidental Direct Physical Damage</u>

The Policy is a named peril policy that only insures sudden and accidental direct physical damage to Covered Equipment.  Covered Equipment does **not** include much of the alleged damages to the building components (roof, walls, finishes etc.). The only equipment that Plaintiff identified as sustaining physical damage are the electrical components that corroded due to water from Sandy.  But Plaintiff has failed to produce any evidence of sudden and accidental physical damage that might fall within the Covered Equipment definition.  The Plaintiff therefore cannot satisfy its burden to prove a loss within the policy's insuring clause. The Court should therefore grant Continental summary judgment on the ground that Plaintiff cannot meet its burden of proof.

Plaintiff bears the initial burden of showing that the Policy covers the alleged loss. *Roundabout Theatre Company, Inc. v. Continental Casualty Company*, 302 A.D.2d 1 (N.Y. App. Div. 1st Dept. 2002); *Consolidated Edison Co. of New York, Inc., v. Allstate Ins. Co.,* 98 N.Y.2d 208 (2002); *Blair v. Allstate Indemnity Co.*, 998 N.Y.S.2d 754 (N.Y. App. Div. 4th. Dept. 2015); *Peerless Dyeing Company, Inc. v. Industrial Risk Insurers*, 392 Pa.Super. 434 (Pa. Sup. Ct. 1990). And, there must be sufficient evidence to create a jury question about whether there is

coverage; "it is not enough to say that something could have happened." *Peerless* 392 Pa.Super. at 447.

In a named-peril policy, such as the policy at issue here, 7001 has the burden of showing that the Policy covers the loss. *Potoff v. Chubb Indemnity Ins. Co.*, 60 A.D.3d 477 (N.Y. App. Div. 1st Dept. 2009); *Roundabout Theatre Company, Inc.* 302 A.D.2d at 1. Thus, unlike an "all-risk" policy that only requires the insured to show the loss was caused by any fortuitous peril not specifically excluded under the policy, 7001 has the burden of showing that a covered loss was caused by a covered peril. *Potoff*, 60 A.D.3d at 477.

Courts, in determining whether the policyholder has met its burden, are guided by the rules governing the interpretation of insurance contracts. *Roundabout* 302 A.D.2d at 2. Where the provisions of a policy are "clear and unambiguous" they must be given their plain and ordinary meaning. *Id.* Courts may not make or vary the policy to accomplish their notions of abstract justice or moral obligation. *Id.*

For instance, in *Peerless Dyeing* the insured, a factory owner, subscribed to a "named peril" policy. *Peerless*, 392 Pa. Super. At 437. The insured attempted to establish that an accident occurred to a boiler, through the testimony of its expert witness, a plant manager. *Id.* at 446. But, the plant manager testified that he was unable to pinpoint what went wrong. Rather, he offered a general opinion that the boiler had been damaged, without testifying to a "reasonable degree of certainty" or "in his professional opinion." Moreover, the insured offered no other evidence in support of its allegation that a covered "accident" occurred. The court stated that "evidence on supposed 'damage' to an insured object amounted to an unfounded guess." *Id.* at 446. Thus, the court held that the insured failed to produce evidence sufficient to

raise a jury question whether it had suffered damage resulting from a named peril or even sustained an accident to covered property. *Id.* at 447.

Here, Plaintiffs' policy contains the following relevant coverage provisions:

    A.  Coverage

      1.  Covered Cause of Loss

          Covered Cause of Loss is a "Breakdown" to "Covered Equipment."

              \*     \*     \*

The above provides that to establish coverage, 7001 must submit proof of a Covered Cause of Loss, which is a "Breakdown" to "Covered Equipment."  And, Breakdown is defined as follows:

    1.  "Breakdown":

    a. Means sudden and accidental direct physical loss to 'Covered Equipment." Which manifests itself by physical damage, necessitating its repair or replacement, unless such loss is otherwise excluded within this Coverage Form. . . .

The above requires Plaintiff to show sudden and accidental direct physical damage to Covered Equipment to meet its burden of proof.  Plaintiff's expert identified water damage and corrosion to the electrical equipment. But Silverman does not identify sudden and accidental direct physical damage as he lacks the facts and expertise to do so. Indeed, he conceded that the damage was "esoteric and would have to be kind of ferreted out for a licensed electrician." (Kirwin Decl. ¶15, Exh.9, 5/26/2015 tr. at p.350-352.).

Silverman similarly failed to identify any physical damage to other equipment in the basement other than to say that such are not "designed to be immersed in water."[1]  Following

_____

[1] Kirwin Decl. ¶14, Exh. 8, 12/16/12 report at p. 4 item 10.

*Peerless*, *supra*, such is nothing more than an unfounded guess that is insufficient to satisfy Plaintiff's burden to prove sudden accidental direct physical damage.

In a similar vein, Plaintiff's expert could only speculate that windstorm *may* have damaged roof top HVAC equipment.[2] Again, such falls well short of satisfying Plaintiff's burden of proof. In view of the Plaintiff's inability to meet its burden to prove sudden accidental direct physical damage, the Court should grant summary judgment that no coverage exists.

### III.   Plaintiff's Own Evidence is that Corrosion, Which the Policy Excludes, Necessitated Replacement of the Electrical Equipment.

Plaintiff's expert testified that the electrical equipment sustained corrosion. And, his report states that all of the electrical equipment needed to be replaced due to corrosion. The policy contains a clear exclusion for loss due to corrosion. Based on plaintiff's own expert opinions, the Court should grant summary judgment that no coverage exists for corroded equipment.

Plaintiff's expert testified as follows:

Q.     If we were to go to the Federal Courthouse . . . what opinion would you offer as to how the electrical system was damaged?

A.     It was damaged by water infiltration, primarily from the roof, and – exclusively from the roof that caused short circuiting and other problems, **corrosion** and other problems, given that the fact that the – water was probably in the basement for some period of time, and there was no heat on in the building for an extended period of time, and other than – and, again, the extent of damage is esoteric and would have to be kind of ferreted out for a licensed electrician. (emphasis added)[3]

In addition to the above Silverman's report states the following:

---

[2] (Kirwin Decl. ¶15, Ex.9 5/26/2015 tr. at p.356-358.)
[3] (Kirwin Decl. ¶15, Ex.9, 5/26/2015 tr. at p.350:13-351:10.)

> 7.) The Electrical service …were inundated with water…will have to be removed and replaced. The panels show evidence of severe corrosion and salt/oxide deposits on copper connectors and the aluminum bus bars….

(Kirwin Decl.,¶14, Exh. 8, Silverman report dated 12/16/2012.).

Plaintiff's above evidence is that the physical damage to the electrical equipment included corrosion that necessitated replacement. The policy excludes corrosion as follows:

> Depletion, deterioration, corrosion, erosion or wear and tear. However if a "Breakdown" occurs, we will pay the resulting loss or damage.

The above clearly excludes the electrical equipment corrosion. New York courts have held that similar exclusions unambiguously exclude coverage for corrosion. *80 Broad Street Co. v. United States fire Ins. Co.*, 88 Misc. 2d 706 (N.Y. Sup. Ct. 1975), Aff'd 54 A.D.2d 888 (1st dep't 1976). (deterioration and corrosion of wall fasteners). *Garson Management Co. v. Travelers Indemnity Co. of Illinois,* 300 A.D. 2d 538 (2nd Dep't 2002) (corrosion of steel beams); *Lantheus Medical Imaging Inc. v. Zurich American Ins. Co*., 2015 WL 1914319 (S.D.N.Y) (corrosion in nuclear vessel). Importantly, the *Lantheus* court held that the corrosion exclusion barred coverage despite the insured's arguments concerning other contributing causes because the policy contained an "anti-concurrent cause" provision.  The Continental Policy exclusions are similarly subject to an anti-concurrent cause provision, discussed in detail below.

> **IV.   Plaintiffs' Losses were Caused by a Combination of Excluded Causes to Which a Clear Anti-Concurrent Cause Provision Applies So that Even if Plaintiff Identified a Covered Breakdown, the Losses are Not Covered.**

Even if 7001 met the burden of proving that a loss under the policy's coverage for equipment "Breakdown" occurred, the loss is not covered because of the anti-concurrent cause provision and the contribution of excluded perils of windstorm, water infiltration sewer backup corrosion, explosion and fire.

**A. The Policy's Anti-Concurrent Causation Provision Warrants Summary Judgment for Continental if Any Excluded Peril Contributed to 7001's Loss**

Plaintiff's own experts establish that its loss was caused by windstorm, water seepage, sewer backup, corrosion, fire and explosion. As detailed in section IV B below, Policy exclusions apply to each of the foregoing.  And, since the policy contains an anti-concurrent cause provision, even if Plaintiff musters evidence of a covered Breakdown, the loss remains excluded. The relevant introductory provision is as follows:

> C. Exclusions
>
> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded, regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>
> The exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

This above means that although there may be other causes, other than the excluded causes, the loss will be excluded even if another cause or event contributes concurrently (at about the same time) or in any sequence (before or after) the loss.  New York courts enforce anti-concurrent causation provisions and hold that losses which involve both covered and non-covered perils are excluded when anti-concurrent causation language is present.

In *Casey v. General Acc. Ins. Co.* 178 A.D.2d 1001 (4th Dept. 1991) the court held an anti-concurrent causation provision excluded coverage where the loss was caused, in part, by surface water, even if other factors, such as "a clogged drain and a sloped roof, may have contributed to the loss." As does the Policy here, the policy in *Casey* excluded losses "caused directly or indirectly" by surface water "regardless of any other cause or event contributing concurrently or in any sequence to the loss." *See also Kula v. State Farm*, 212 A.D.2d 16 (4th

Dept. 1995) (holding that earth movement exclusion precluded coverage when a broken pipe caused soil under plaintiff's home to wash away);

Three Southern District courts recognized that New York courts apply anti-concurrent causation language to preclude coverage where a loss results from multiple contributing causes if one is excluded. *ABI Asset Corp. v. Twin City fire Ins. Co.*, No. 96 Civ. 2067 (AGS), 1997 WL 724568, at *2 (S.D.N.Y. Nov. 18, 1997); *Lantheus, supra* (anti concurrent cause provision excluded coverage even if excluded corrosion combined with other causes.); *Alamia v. Nationwide* Mut. Ins. Co., 495 F.Supp.2d 362 (S.D.N.Y 2007)(covered broken pipe caused soil erosion and excluded earth movement). The *Alamia* court found that any other construction would render the anti-concurrent cause provision meaningless. *Id*. at 368, citing *Moshiko, Inc. v. Seiger & Smith*, Inc., 529 N.Y.S.2d (1st Dep't 1988, aff'd 533 N.Y.S.2d 52 (1998). *Alamia* is also instructive because the insured's own expert provided the causation evidence as is the case here. *Id*. at 368.

*ABI* is noteworthy as well in its acknowledging that a different result could obtain in the absence of anti-concurrent cause provision. In this regard, the *ABI* court distinguished a factually similar case where coverage was found because the policy in that case did not contain and anti-concurrent cause provision. *ABI Asset Corp.* at *2. The *ABI* decision therefore reflects a judicial acknowledgement that the anti-concurrent cause provision makes policy exclusions applicable even when an insured can identify some covered cause that contributed to the loss.

As directly applicable here, another Southern District court granted summary judgment to the insurer in a Sandy case. *Clarke v. Travco Ins. Co*., 2015 WL 4739978 *8. *Clark* involved similar claims that wind caused the damage not flood. The court granted summary judgment to the insurer based on an identical anti-concurrent cause provision.

An Eastern District court also acknowledged the effect of an anti-concurrent cause provision when covered and excluded causes contribute to a loss. *Cashew Holdings, LLC v. Canopius U.S. Ins. Inc*., 2013 WL 4735645.  And, other courts have similarly found no coverage for water damage from windstorms based on the anti-concurrent cause provision. *See i.e. Bilbe v. Belsom*, 530 F.3d 314 (5th Cir. 2008) (applying Louisiana law). (Policy unambiguously excluded hurricane storm surge damage even if wind damage occurred before the storm surge). *Ngyuen v. Atlantic Cas. Ins. Co*., 2008 WL 1884050 (E.D. La. 2008) (applying Louisiana law); (No coverage for wind-driven flooding caused by hurricane.); *Bao v. Liberty Mut. Fire Ins. Co*., 535 F. Supp. 2d 532 (D. Md. 2008) (applying Maryland law); (Surface water exclusion applicable even though wind broke glass door allowing basement flooding.); *Legacy Condominiums, Inc. v. Landmark American Ins. Co*., 2008 WL 80373 (S.D. Miss. 2008) (applying Mississippi law). (even if wind caused a breach that allowed both rain and spray to enter and damage the same area, the loss was not compensable).

Similarly, courts find no coverage based on an anti-concurrent cause provision in the context of a storm causing sewer backup. *Kaleb E. Lindquist American Legion Post #24 v. Lake of the Woods Agency, Inc*., 2005 WL 525699 (Minn. Ct. App. 2005).  (Anti concurrent cause provision made flood exclusion applicable to sanitary and storm sewer backup even though sewer backup was covered by endorsement); *Pakmark Corp. v. Liberty Mut. Ins. Co*., 943 S.W.2d 256 (Mo. Ct. App. E.D. 1997); (No coverage for a combination of sewer backup, a covered peril, and flood water); *Assurance Co. of America, Inc. v. Jay-Mar, Inc.*, 38 F. Supp. 2d 349 (D.N.J. 1999) (applying New Jersey law) (Same); *Front Row Theatre, Inc. v. American Mfr's. Mut. Ins. Companies*, 18 F.3d 1343, 1994 FED App. 0083P (6th Cir. 1994) (applying Ohio law). (Same).

In view of the foregoing, even if Plaintiff can muster evidence of a covered peril, the loss remains excluded because excluded perils combined to cause its loss.  Plaintiff therefore can prove no set of facts to establish coverage and the Court should therefore grant Continental summary judgment.

### B.  Policy Exclusions Applicable to Plaintiff's Loss

The evidence from Plaintiff's own experts establish that its loss resulted from the excluded perils of wind, flood, water seepage, sewer backup, corrosion, fire and explosion, all of which are excluded. All alleged damage was caused by water with the exception of the disputed allegation of wind damage to the roof.  We therefore discuss the water damage first and then address the other excluded causes of 7001's loss.

#### 1.  Water

The water that affected the equipment in the basement falls within the following exclusion for Water:

> 3.   Water
>   a.   Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);
>
>                         ***
>
>   c.   Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;
>
>                         ***
>
>   e.   Water under the ground surface pressing on, or flowing or seeping through:
>        (1)   Foundations, walls, floors or paved surfaces;
>        (2)   Basements, whether paved or not;
>        (3)   Doors, windows or other openings; or
>
>                         ***

16

Any wind driven water (storm surge) that entered the basement falls within 3(a). Water that backed up from the sewer falls within 3(c), and water seeping into the basement through doors, windows or other openings falls within 3(e).

It is undisputed that water filled 7001's basement as Plaintiff's expert merely disagrees as to how it got there. The water in the basement is also evident from the observations made by John DiGrande concerning the water line, the presence of oxidized electrical equipment, and the wet medical files in the basement of the strip mall.

There is also no question that flood water inundated the Bergen Beach peninsula upon which the strip mall is located.  This is evident from the certified weather data presented by Richard Vivenzio of Thornton Tomasetti, which indicates scant rain of about half an inch fell in the vicinity of the strip mall. Even the 2-3 inches of rain proffered by Plaintiff's expert could not possibly create 2-3 feet of water in the basement.  (Richard Vivenzio's expert report is attached as Exhibit 1 to his Affidavit.)

In addition, the FEMA flood maps show what we all know to be true having lived through Sandy – that this was a major flood event in New York.  The FEMA flood maps show that up to two feet of flood water surrounded approximately 80% of the strip mall's perimeter, with the intersection of East 70th Street and Avenue U having up to five feet of water present.  As shown in Appendix B to Mr. Vivenzio's expert report, the FEMA model task force flood maps show the strip mall was inundated by flood waters.  (Vivenzio Aff., Exh. 1.)



*Birds eye view of 7001 East 71st Street, Brooklyn, New York (Photo source FEMA)*
(Affidavit of Richard Vivenzio of Thornton Tomasetti attaching expert report as Exhibit 1.)

In addition to the foregoing evidence of flood, there are eye witness accounts. John Pizzirusso, testified that the flood waters carried a boat onto the lawn of St. Bernard's church across 70th Street from the strip mall. (Kirwin Decl., ¶10, Exh.4, tr. at p. 44-45.) Rocky Agostino discussed how everyone on Avenue U got a new car because cars were floating all over Avenue U near the strip mall. (Kirwin Decl., ¶13, Exh.7, tr. at 91:17-92:15).

The overwhelming evidence is that 7001's basement flooded from storm surge just like its neighbors. And, the idea that a half inch of rain, or even the 2-3 inches that plaintiff's expert claims, could leak through a roof and create 2-3 **feet** of water in the same sized basement is simply untenable. (Vivenzio Aff., Exh. 1, expert report at p. 5.) No reasonable fact-finder could ever accept such a physical impossibility.

It is therefore patent that much of the water in the basement backed up from the sewer and/or that flood water seeped in. Such would account for the other 90% of the volume of water

18

present.  And, Plaintiff's own experts confirmed these two sources.  Olmstead confirmed the sewer backup based on the presence of fecal coliform established by laboratory testing (Transcript of Edward Olmstead, Exh.¶9, Exh. 3 to Kirwin Decl., at 41:15-45:25 quoted portion at 45:6-25). And, plaintiff's expert Silverman agreed that the sump pumps did not operate and allowed water infiltration from all sources (flooding, sewer backup and ground water) (Kirwin Decl.,¶14, Exh. 8, Silverman report dated 12/16/2012 at Pg 3 note 6.) .

New York courts enforce the plain language of the water exclusion to bar recovery for damages due to flood. *See, KJDE Corp., d/b/a K.J. Electric v. The Hartford Fire Ins. Co.*, 89 AD.3d 1531, 1532 (4th Dept. 2011) (flood exclusion not ambiguous, cause of flooding was heavy rains over course of two days, and not a clogged culvert); *B&W Heat Treating Co., Inc. v. Hartford Fire Ins. Co.*, 23 AD.3d 1102, 1103 (4th Dept. 2005) (policy only provided coverage for water which backs up from sewer or drain and was subject to a flood exclusion; because damage was caused by flood, even if clogged drain contributed to damage, no coverage); *Casey v. General Accident Ins. Co.*, 178 AD.2d 1001, 1002 (4th Dept. 1991) (policy excluded coverage for water damage, including surface water; though other factors, including clogged drain may contribute to the loss, coverage excluded by terms of water damage exclusion); *EB Metal & Rubber Indus., Inc. v. Federal Ins. Co.*, 84 AD.2d 662,663 (3d Dept. 1981) (enforcing flood exclusion, even though a defect in a dike may have also contributed to damage caused by water).

New York courts also enforce exclusions for sewer back up. *Newlo Realty Co., U.S.F&G. Corp*, 213 A.D.2d 295 (App. Div. 1st Dep't 1995). And, New York courts enforce exclusions for seepage of water. *Goodman v. Broome County Co-Operative Fire Insurance Co*., 135 A.D. 2d 906 (App. Div. 3rd Dep't 1987); *Budd Looms, Inc., v. American Cas. Co. of Reading PA*., 43

19

A.D.2d 923 (App. Div. 1ˢᵗ Dep't 1974);  *Lattimore Road Surgicenter, Inc., v. Merchants Group, Inc.*, 71 A.D.3d 1379 (App. Div. 4ᵗʰ Dep't 2010).

New York courts have continued to enforce flood exclusions in response to other litigation arising out of Sandy. In *Bamundo, Zwal & Schermerhorn, LLP v. Sentinel Ins. Co., Ltd.*, 2015 WL 1408873 (S.D.N.Y. Mar. 26, 2015), Judge Sullivan found that a Manhattan law firm seeking civil authority coverage was barred from recovering for loss of business income because any evacuation orders that were issued with respect to New York City were the direct result of flooding which was an excluded cause of loss under the policy at issue. Similarly, in *La Casa Di Arturo, Inc. d/b/a Arturo's v. Tower Group, Inc., et al.*, 49 Misc.3d 1209(A) (Sup. Ct. NY Cty 2015) New York County Supreme Court Justice Cynthia Kern held that Tower Group, the insurer of Arturo's Pizza, had no coverage obligation to the pizzeria for their claimed loss of business income and stored food losses arising out of a power outage following Sandy.  The Court found that the power outage was caused by flooding which was excluded from the policy.

Most of the cases considering flood exclusions concern all-risk policies. That fact that Continental's Policy provides equipment breakdown coverage makes the flood exclusion no less enforceable.   On the contrary, for damage to be considered a breakdown, the mechanical equipment must be the *cause* of the loss, rather than an *effect* of the loss. *Connie's Constr. Co., Inc. v. Continental Western Ins. Co.*, 227 N.W.2d 204, 207 (Iowa 1975).  In *Connie's Constr. Co., Inc.*, Iowa's Supreme Court explained that mechanical breakdown means "functional defect in the moving parts of machinery which causes it to operate improperly or cease operating." *Id.* Here, with respect to the damaged equipment at the strip mall, it is clear that there was no "sudden and accidental" equipment breakdown that caused a loss as required by the Policy.

Instead, the damage to the electrical equipment was caused by flood waters coming into contact with the electrical equipment, and not by anything that happened to the equipment itself.

And, even if the equipment had suffered a sudden and accidental breakdown, that loss would still fall within the flood exclusion. In a case directly on point, flood waters reached electrical equipment and caused electrical arcing and short-circuiting, *Continental Ins. Co. v. Arkwright Mut. Ins. Co.*, 102 F.3d 30, 38 (1st Cir. 1996) (applying N.Y. law).  The Court in *Arkwright* did not look at the electrical *response* to the flood water as the cause of the loss; instead, they understood it to be the effect of the loss.

Based on the foregoing evidence and authority, this Court should hold that the water in 7001's basement falls within the policy's "water" exclusion.

### 2.   Other Causes

Plaintiff relies primarily on wind as damaging the roof and causing its loss.  But the policy excludes "windstorm."  And, as discussed in Point III above, the damage to the electrical equipment is excluded corrosion. The other potential causes identified by plaintiff's expert are fire and explosion but these are also excluded.

The relevant exclusions are as follows.

6.      An explosion…

7.      Fire or combustion explosion including those that:
    a.      Result in a "Breakdown:'
    b.      Occur at the same time as a "Breakdown"; or
    c.      Ensue from a "Breakdown."

15.      A "Breakdown" that is caused by windstorm or hail.

Mr. Silverman's December 16, 2012 report (paragraph 7) and his testimony reference fire and/or explosion as possible cause of loss.  (Kirwin Decl. ¶15, Exh.9, Silverman 5/15/2016 trans. 150:4-151:20 and Silverman report Exh.8 to Kirwin Decl.). But there is virtually no evidence of

21

explosion or fire. Even if Plaintiff came forward with such evidence courts enforce exclusions for fire and explosion in equipment breakdown policies. See *Jamaica Public Service Co., Ltd. v. La Interamericana Compania de Seguros Generales, S.A*., 1 A.D.3rd 130 (App. Div. 1st dep't 2003); *Ratliff Enterprises, Inc., American Employers Ins. Company*, 334 Ark. 547 (Ark. Sup. Ct. 1998).

Plaintiff does present Silverman's opinion that attributes the loss due to windstorm. Silverman's November 4, 2014 expert "letter" or "report" attributes the loss to "diffuse water infiltration through the roof, secondary to wind damage as documented by a roofing subcontractor engaged by the owner of the property . . ." [emphasis added.] Silverman testified "the roof membrane was damaged during a wind event, most likely" (Kirwin Decl. ¶15, Exh.9, 5/26/2015 tr. at p.350-352.) Damage caused by windstorm is excluded from the Policy. And, a New York court held that damage from Hurricane Gloria fell within an exclusion for "windstorm." *Purpura v. Continental Cas. Co*., 143 A.D. 2d 741 (App. Div. 2nd Dep't 1988). It is noteworthy that the *Purpura* court affirmed summary judgment for Continental even though other causes contributed to the loss based on an anti-concurrent cause provision.

## CONCLUSION

Accepting the plaintiff's version of the facts means its loss resulted from excluded windstorm, water seepage, sewer backup, corrosion and explosion/fire. The overwhelming evidence is that 7001's basement filled with water due to flood and not rain. No reasonable factfinder could find that a few inches of rain can lead to a few feet of water in a basement without contribution from sewer backup and/or flood water. The Court could grant summary judgment on this ground alone.

But summary judgment is warranted as a matter of law even on plaintiff's version of the facts for three reasons.

First, Plaintiff has failed to produce any evidence of sudden and accidental physical damage that triggers the Policy's insuring provision for a Breakdown.

Second, the corrosion damage that Plaintiff did identify is expressly excluded.

Third and most significantly, the Policy's anti-concurrent cause lead in language excludes all loss resulting from excluded causes even if other causes contribute concurrently or in any sequence.  Thus, even if Plaintiff could cure its foregoing failures, no coverage exists based on Plaintiff's own expert evidence that excluded windstorm, flood, sewer backup and corrosion contributed to its loss.

Continental therefore respectfully requests that this Court enter summary judgment that no coverage exists.


April 4, 2016
New York, New York

Respectfully submitted,

_____
Bernadette Kelly Kirwin (BK4718)
COLLIAU CARLUCCIO KEENER MORROW
 PETERSON & PARSONS
125 Broad Street, 7th Floor
New York, NY  10004
(212) 440-2747


To be served and filed via ECF.

23